**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-3382

MATTHEW BUCK,
Plaintiff

v.

HASBRO, INC.,
Defendant

COMPLAINT AND JURY DEMAND

## NATURE OF THE COMPLAINT

1. This is a civil action for declaratory relief to establish the rights of private citizens to create private, non-commercial, transformative art for their own personal use.

2. Plaintiff is attempting to hire a private hockey manufacturer to create a set of "tribute" hockey pads, bearing the likeness and idea of Defendant's intellectual property.

## PARTIES

3. Plaintiff Matthew Buck ("Buck") is an individual residing in Denver, Colorado, and is a civil rights attorney.

4. Defendant, Hasbro, Inc., is a multinational corporation, headquartered in Rhode Island, doing business across the world, including across Colorado.

## JURISDICTION AND VENUE

5. This action arises under the copyright laws of the United States, 17 U.S.C. § 101, et sq. The court has subject matter jurisdiction over this claim pursuant to 27 U.S.C. § 1331, 28 U.S.C. § 1338, and the Declaratory Judgment Act, 28 U.S.C. § 2254.

6. This court has personal jurisdiction over Defendant Hasbro because it conducts regular business in the state of Colorado, employing people in both Denver and Colorado Springs, Colorado, on top of selling its products across the state.

7. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b) and § 1400(a).

## **FACTUAL ALLEGATIONS**

8. Plaintiff Matthew Buck is a Civil Rights attorney in Denver, Colorado. He has been playing hockey for 25 years.

9. Plaintiff wishes to have a pair of Transformers hockey pads created for himself, by a private manufacturer, and not for resale or so that the Plaintiff can profit from them.

10. According to its Wikipedia entry, Transformers is a media franchise produced by American toy company Hasbro and Japanese toy company Takara Tomy. It follows the battles of sentient, living autonomous robots, often the Autobots and the Decepticons, who can transform into other forms, such as vehicles and animals. The franchise encompasses toys, animation, comic books, video games and films.

11. Hasbro neither creates sporting equipment, nor licenses its trademarks or copyright to sporting goods companies.

12. Hasbro does not sponsor any hockey teams, or any professional athletes.

13. In conceiving the designs for the hockey pads, Buck selected designs and patterns that were evocative of the cartoon show he had watched in his youth.

14. A pair of hockey pads for a goalie traditionally consists of a catcher, or a glove, worn on the hands; a blocker, worn on the opposite hand from the catcher, and a pair of leg pads.

15. Buck collaborated with a national retailer of hockey equipment on his designs, meticulously choosing color, material, and placement.

16. None of this work was commercial in nature, as the money made will be made on the sale of the hockey pads themselves – the design is provided by the customer and is not part of the transaction with the hockey retailer.

17. Buck provided a design for a glove based on the Decepticon Soundwave, shown here:



18. Buck provided a design for a blocker based on the Autobot Bumblebee, shown here:



19. Buck provided a design for a pair of legs pads based on the Autobot Optimus Prime, shown here:



20. While evocative of the intellectual property owned by Hasbro, none of the designs are copies of Hasbro's work, and are all based on artwork done by private artists and then modified to fit the counters of hockey equipment.

21. In some cases, such as the Soundwave glove, other than the Decepticon logo (The purple robot head), if you are not intimately familiar with the original transformer (Shown below) you would not know it was a Hasbro product.



22. Both the national retailer and equipment manufacturer require permission from Hasbro to make the equipment, given the statutory penalties for each instance of copyright violation.
23. The damages, should Hasbro pursue litigation, could reach almost $1,000,000 should they choose to treat each logo as a separate instance of infringement.
24. Buck reached out the Permissions@hasbro.com email address, in September of 2020, explaining that the work was of a transformative, non-commercial, private use.
25. The permissions email responded with a flat refusal, explaining that they cannot honor every request that they get.
26. Buck then reached out to the general counsel of Hasbro, Tarrant Sibley, as well as his deputy GC, Elizabeth Cox, in November of 2020.
27. Buck received no response from Sibley, and Cox responded to him from the Permissions@hasbro.com e-mail address.
28. To be sure that Hasbro considered the request to avoid the potential of litigation, in November of 2020, Buck also reached out to counsel currently representing Hasbro in IP litigation, who did not respond.
29. This complaint now follows.

## FIRST CAUSE OF ACTION

Declaratory Judgment – Non-Infringement

17 U.S.C. § 101, *et seq*.

30. Plaintiff incorporates by reference the allegations in each of the proceeding paragraphs as if fully set forth in this paragraph.

31. An actual controversy exists as to whether the proposed hockey equipment infringes any copyright owned by Hasbro.

32. The works are transformative in nature, and occupy a very separate space from Hasbro's works, which exist in media, and the toy markets.

## SECOND CAUSE OF ACTION

Declaratory Judgment – Fair Use

17 U.S.C. § 107

33. Plaintiff incorporates by reference the allegations in each of the proceeding paragraphs as if fully set forth in this paragraph.

34. An actual controversy exists as to whether Buck's commissioning of hockey equipment to which Hasbro holds copyrights is protected by the Fair Use Doctrine.

35. Buck used Hasbro's intellectual property as a visual reference for a highly transformative purpose; Buck altered the original work with new meaning, new expression, new form, and a new medium. Buck did not and does not wish to create these works for commercial gain.

36. Thousands of artistic renditions exist in the world of The Transformers, and they do not infringe upon Hasbro's market share. Similarly, the works that Buck seeks to have created would not infringe upon a market that Hasbro has not, and does not exist in.

37. Buck is therefore entitled to a declaratory judgment that use of the Transformers logo and copyrighted works as a visual reference in creating the Transformers pads is protected by the Fair Use Doctrine.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court enter an judgment:

38. Declaring that Buck's works do not infringe any copyrights held by Hasbro;
39. Declaring that Buck's use of the Transformers characters and logos is privileged under, and protected by, the Fair Use Doctrine;
40. Enjoining Hasbro, its agents, attorneys, and assigns from asserting copyrights against Buck, any retailer that facilitates the sale of the pads, or any company that manufactures the pads for Buck.
41. Awarding any other relief the Court deems just and proper.

DATED: November 13, 2020

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues properly triable to a jury.

Respectfully submitted,
*/S Matthew W Buck*
Appearing Pro Se
RED LAW
144 W 11th Avenue
Denver CO 80204
720-507-1884
matt@red.law