**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-3382

MATTHEW BUCK,
Plaintiff

v.

HASBRO, INC.,
Defendant

FIRST AMENDED COMPLAINT AND JURY DEMAND

## NATURE OF THE COMPLAINT

1. This is a civil action for declaratory relief to establish the rights of private citizens to create private, non-commercial, transformative art for their own personal use.

2. Plaintiff is attempting to hire a private hockey manufacturer to create a set of "tribute" hockey pads, bearing the likeness and idea of Defendant's intellectual property.

## PARTIES

3. Plaintiff Matthew Buck ("Buck") is an individual residing in Denver, Colorado, and is a civil rights attorney.

4. Defendant, Hasbro, Inc., is a multinational corporation, headquartered in Rhode Island, doing business across the world, including across Colorado.

## JURISDICTION AND VENUE

5. This action arises under the copyright laws of the United States, 17 U.S.C. § 101, et sq. The court has subject matter jurisdiction over this claim pursuant to 27 U.S.C. § 1331, 28 U.S.C. § 1338, and the Declaratory Judgment Act, 28 U.S.C. § 2254.

6. This court has personal jurisdiction over Defendant Hasbro because it conducts regular business in the state of Colorado, employing people in both Denver and Colorado Springs, Colorado, on top of selling its products across the state.

7. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b) and § 1400(a).

## FACTUAL ALLEGATIONS

8. Plaintiff Matthew Buck is a Civil Rights attorney in Denver, Colorado. He has been playing hockey for 25 years.

9. Plaintiff wishes to have a pair of Transformers hockey pads created for himself, by a private manufacturer, and not for resale or so that the Plaintiff can profit from them.

10. According to its Wikipedia entry, Transformers is a media franchise produced by American toy company Hasbro and Japanese toy company Takara Tomy. It follows the battles of sentient, living autonomous robots, often the Autobots and the Decepticons, who can transform into other forms, such as vehicles and animals. The franchise encompasses toys, animation, comic books, video games and films.

11. Hasbro neither creates sporting equipment, nor licenses its trademarks or copyright to sporting goods companies.

12. Hasbro does not sponsor any hockey teams, or any professional athletes.

13. In conceiving the designs for the hockey pads, Buck selected designs and patterns that were evocative of the cartoon show he had watched in his youth.

14. A pair of hockey pads for a goalie traditionally consists of a catcher, or a glove, worn on the hands; a blocker, worn on the opposite hand from the catcher, and a pair of leg pads.

15. Buck collaborated with <u>Pure Hockey,</u> a national retailer of hockey equipment on his designs, meticulously choosing color, material, and placement.

16. None of this work was commercial in nature, as the money made will be made on the sale of the hockey pads themselves – the design is provided by the customer and is not part of the transaction with the hockey retailer.

17. The process for custom designing the pads began on September 11, 2020.

18. The process for custom hockey pads in this instance consists of a consumer choosing a retailer to facilitate payment to the manufacturer, in this case, Brian's Hockey of Ontario, Canada.

19. Buck contacted Pure Hockey because of their expertise in the field, and began a lengthy design process with them, spanning hundreds of e-mails and phone calls, honing the design from September 11, 2020, until November 28, 2020.

20. Buck provided his payment information to Pure Hockey on October 30, 2020, as the designs were in final preparation to be sent to production at Brian's.

21. On or around November 28, 2020, Brian's informed Pure Hockey that they were in need of a letter of permission from Hasbro before they would produce the pads.

22. Buck reached out the [Permissions@hasbro.com](mailto:Permissions@hasbro.com) email address, in September of 2020, explaining that the work was of a transformative, non-commercial, private use.

23. The permissions email responded with a flat refusal, explaining that they cannot honor every request that they get.

24. Buck then reached out to the general counsel of Hasbro, Tarrant Sibley, as well as his deputy GC, Elizabeth Cox, in November of 2020.

25. Buck received no response from Sibley, and Cox responded to him from the

[Permissions@hasbro.com](Permissions@hasbro.com) e-mail address.

26. To be sure that Hasbro considered the request to avoid the potential of litigation, in November of 2020, Buck also reached out to counsel currently representing Hasbro in IP litigation, who did not respond.

27. <u>In preparation for having his pads made</u> Buck provided a design for a glove based on the Decepticon Soundwave, shown here:



28. Buck <u>also</u> provided a design for a blocker based on the Autobot Bumblebee, shown here:



29. Buck <u>also</u> provided a design for a pair of legs pads based on the Autobot Optimus Prime, shown here:



30. While evocative of the intellectual property owned by Hasbro, none of the designs are copies of Hasbro's work, and are all based on artwork done by private artists and then modified to fit the counters of hockey equipment.

31. In some cases, such as the Soundwave glove, other than the Decepticon logo (The purple robot head), if you are not intimately familiar with the original transformer (Shown below) you would not know it was a Hasbro product.



32. Both ~~the national retailer~~ <u>Pure Hockey</u> and <u>Brian's</u> require permission from Hasbro to make the equipment, given the statutory penalties for each instance of copyright violation.

33. The damages, should Hasbro pursue litigation, could reach almost $1,000,000 should they choose to treat each logo as a separate instance of infringement.

34. This complaint now follows.

## **FIRST CAUSE OF ACTION**

### **Declaratory Judgment – Non-Infringement 17 U.S.C. § 101, *et seq*.**

35. Plaintiff incorporates by reference the allegations in each of the proceeding paragraphs as if fully set forth in this paragraph.

36. An actual controversy exists as to whether the proposed hockey equipment infringes any copyright owned by Hasbro. <u>Buck has engaged a manufacturer to manufacture the designs embedded in this complaint, but for declaratory relief that the manufacture of the pads is covered by fair use, they will not manufacture the pads. Payment information has been provided to the retailer.</u>

37. <u>Brian's is prepared to manufacture the pads immediately, pending an order from this court. (See attached letter from Brian's manufacturing).</u>

38. The works are transformative in nature, and occupy a very separate space from Hasbro's works, which exist in media, and the toy markets.

39. <u>Buck seeks a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., that it is not infringing upon Hasbro's purported copyrights and trademarks and therefore is not violating the Copyright Act, Lanham Act, or the common law by paying for Brian's to manufacture the pads for him.</u>

## SECOND CAUSE OF ACTION

## Declaratory Judgment – Fair Use 17 U.S.C. § 107

40. Plaintiff incorporates by reference the allegations in each of the proceeding paragraphs as if fully set forth in this paragraph.

41. An actual controversy exists as to whether Buck's commissioning of hockey equipment to which Hasbro holds copyrights is protected by the Fair Use Doctrine.

42. Buck used Hasbro's intellectual property as a visual reference for a highly transformative purpose; Buck altered the original work with new meaning, new expression, new form, and a new medium. Buck did not and does not wish to create these works for commercial gain.

43. Thousands of artistic renditions exist in the world of The Transformers, and they do not infringe upon Hasbro's market share. Similarly, the works that Buck seeks to have created would not infringe upon a market that Hasbro has not, and does not exist in.

44. Buck is therefore entitled to a declaratory judgment that use of the Transformers logo and copyrighted works as a visual reference in creating the Transformers pads is protected by the Fair Use Doctrine.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court enter an judgment:

45. Declaring that Buck's works do not infringe any copyrights held by Hasbro;

46. Declaring that Buck's use of the Transformers characters and logos is privileged

under, and protected by, the Fair Use Doctrine;

47. Enjoining Hasbro, its agents, attorneys, and assigns from asserting copyrights against Buck, any retailer that facilitates the sale of the pads, or any company that manufactures the pads for Buck.

48. Awarding any other relief the Court deems just and proper.

DATED: January 21, 2021

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues properly triable to a jury.

Respectfully submitted,<br>
<u>*/S Matthew W Buck*</u><br>
Appearing Pro Se<br>
RED LAW<br>
144 W 11th Avenue<br>
Denver CO 80204<br>
720-507-1884<br>
matt@red.law