# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-3382-WJM-MEH

MATTHEW BUCK,

    Plaintiff,

v.

HASBRO, INC.,

    Defendant.

---

# HASBRO, INC.'S MOTION TO DISMISS
# PLAINTIFF'S FIRST AMENDED COMPLAINT
# PURSUANT TO FED. R. CIV P. 12(b)(1), 12(b)(2) AND, ALTERNATIVELY, 12(b)(6)

---

## TABLE OF CONTENTS

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| III. | LEGAL STANDARDS | 3 |
| IV. | ARGUMENT | 5 |
| V. | CONCLUSION | 17 |

## MEMORANDUM OF POINTS AND AUTHORITIES

The defendant, Hasbro, Inc. ("Hasbro"), respectfully submits this (renewed) motion to dismiss all claims brought by the plaintiff, Matthew Buck ("Buck") in his First Amended Complaint, pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(2) and, alternatively, 12(b)(6). To the extent the Court deems relevant the copyrighted images that are the subject of Buck's First Amended Complaint, Hasbro provides them with the Declaration of Robert Turner ("Turner Decl."), and requests that the portion of the motion directed to Rule 12(b)(6) be converted to a motion pursuant to Rule 56.

> **CERTIFICATE OF CONFERRAL**
>
> Pursuant to WJM Revised Practice Standards III.D.1., Hasbro's counsel, Shay P. Talbitzer, certifies that she conferred with Plaintiff Matthew Buck, an attorney representing himself, on multiple occasions preceding the filing of Hasbro's initial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and alternatively, 12(b)(6) on January 12, 2021. Thereafter, Mr. Buck contacted Hasbro's counsel to confer on a motion for leave to amend his complaint to add facts relevant to Hasbro's motion to dismiss for lack of subject matter jurisdiction. On 21st, 22nd and 25th days of January, 2021, the parties conferred regarding Mr. Buck's amended complaint and Hasbro's anticipated renewed motion to dismiss. The parties disagree that Mr. Buck's pleading amendment resolves any ground of Hasbro's motion to dismiss. The parties have a fundamental difference of opinion regarding the relevant law and do not believe that any additional pleading amendment could resolve the bases of Hasbro's renewed motion to dismiss.

## I.   INTRODUCTION

Despite amending his complaint, Buck's claims still fail for three independent reasons. First, this Court still does not have personal jurisdiction over Hasbro because Hasbro only touches the state through the sale of its products by third-party retailers. Second, this Court still does not have subject-matter jurisdiction over this matter because Buck's request for guidance on the legal consequences of future conduct does not create an actual case or controversy, as required under the Declaratory Judgment Act. Third, to the extent the Court deems that it has jurisdiction to

decide substantive issues, Buck still fails to state a claim because his purchase of hockey pads with Transformers images on them would, if consummated, constitute copyright infringement that would not be protected as fair use.

## II. FACTUAL BACKGROUND

Hasbro is a corporation organized under the laws of Rhode Island, with its principal place of business in that state. Turner Decl., ¶ 2. Although Hasbro previously had a place of business in Colorado, it has not had a physical presence in the state since 2019. *Id*., ¶ 9. Hasbro's only connection to Colorado is that retailers sell Hasbro product in the state, and residents in Colorado may shop for Hasbro product online (although any purchase still must be made through an authorized retailer). *Id.*, ¶ 11. Except for isolated instances where it may supply retailers with temporary workers or independent contractors to help during the holiday season (a practice that is not unique to Colorado), Hasbro does not maintain a salesforce in Colorado or employ any employees in the state. *Id*., ¶ 9. Hasbro also does not own any real property in the state. *Id.,* ¶ 10. As a result of its limited connections, Hasbro is not registered to do business in Colorado. *Id.*, ¶ 8.

Buck brought this declaratory judgment action because he "wishes to have a pair of Transformers hockey pads created for himself[] by a private manufacturer." First Amended Complaint and Jury Demand ("Compl."), ¶ 9. Specifically, Buck would like to purchase hockey pads with images that are based on Hasbro's "Decepticon Soundwave," "Autobot Bumblebee," and "Autobot Optimus Prime" copyrighted images (the "Transformers Pads"). *Id*., ¶¶ 15-19. Understandably, however, the manufacturer will not create and sell the Transformers Pads without express permission from Hasbro. *Id*., ¶¶ 21, 32 & Compl. Ex. In fact, the letter Buck attached to

his First Amended Complaint provides that the hockey pads manufacturer, Brian's Hockey of Ontario, Canada, "is prepared to begin production of this equipment immediately but will not do so until we have received [Hasbro's] expressed written permission." *Id.* ¶ 18 & Compl. Ex. Buck claims that he sought permission from Hasbro for that purpose, but Hasbro either denied the request or, in some instances, did not respond at all. *Id.*, ¶¶ 22-26. Hasbro's communications and decisions regarding that request were made by employees based in Rhode Island.[1] Turner Decl., ¶ 7.

### III. <u>LEGAL STANDARDS</u>

#### A. The Standard of Review Under Fed. R. Civ. P. 12(b)(2)

While a plaintiff has the burden of establishing personal jurisdiction, that burden varies depending on the pretrial procedure employed by the court. *See Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). The court has discretion to decide whether the facts regarding jurisdiction should be determined by reference to affidavits, by a pretrial evidentiary hearing, or a trial on the merits. *Id.* "When a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." *Id.* "The 'well pled facts' of the complaint must be accepted as true if uncontroverted by the defendant's affidavits, and factual disputes at this initial stage must be resolved in the plaintiff's favor when the parties present conflicting affidavits." *Id.*

#### B. The Standard of Review Under Fed. R. Civ. P. 12(b)(1)

Dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate if the Court lacks subject-matter jurisdiction over the claims asserted in the complaint. "The burden of establishing subject

---

[1] At the time of the relevant decisions and communications, some of the employees may have operated from their home in Massachusetts due to COVID restrictions. *Id.*

matter jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 24, 518 F.3d 1186, 1189 (10th Cir. 2008). Rule 12(b)(1) challenges are generally presented in one of two forms. "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). For purposes of this Motion, Hasbro relies solely upon the facts as alleged in the Complaint.

### C. The Standard of Review Under Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations ... and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). A plaintiff may not, however, rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). To state a claim that is plausible on its face, a complaint must "sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

To the extent that the Court considers information outside the Complaint that it deems relevant to its analysis, it must convert a motion pursuant to Rule 12(b)(6) to a motion pursuant to Rule 56. Fed. R. Civ. P. 12(d). In this instance, Hasbro includes with the Turner Decl. images of the copyrighted images that are the subject of Buck's claims. Hasbro does not believe that those images are necessary for the Court to resolve Hasbro's arguments relevant to the Rule 12(b)(6) portion of its motion, but provides them in the event that the Court disagrees. Under Rule 56, summary judgment is appropriate where no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## IV.    ARGUMENT

### A.    Hasbro Is Not Subject to This Court's Personal Jurisdiction[2]

#### 1.    The Legal Standard

"To obtain personal jurisdiction over a nonresident defendant, the plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does

---

[2] Buck alleges this Court is a proper venue under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a). (Compl. at ¶7.) Buck does not allege copyright infringement, however; rather, he has brought a declaratory judgment action seeking a declaration of non-infringement. Under those circumstances, only the general venue statute applies. *See U.S. Aluminum Corp. v. Kawneer Co., Inc.*, 694 F.2d 193, 195 (9th Cir. 1982) (holding venue in a declaratory judgment action for patent noninfringement and invalidity is governed by the general venue statute, not the special patent infringement statute). This Court should dismiss this case for improper venue for the same reasons this Court should dismiss for lack of personal jurisdiction: Buck has not alleged that Hasbro has

not offend the due process clause of the Fourteenth Amendment." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). Because neither the Copyright Act, 17 U.S.C. § 101 et seq., nor the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, provides for nationwide service of process, Fed. R. Civ. P. 4(k)(1)(A) commands a district court to apply the law of the state in which the district court sits. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

Colorado's long-arm statute confers personal jurisdiction to the extent that doing so is consistent with due process. *See id.* "[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Id.* Personal jurisdiction can be acquired through either general jurisdiction or specific jurisdiction.

## 2. The Court Lacks General Jurisdiction Over Hasbro

"A court may assert general jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The "paradigm" forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business. *Id.*[3] In focusing on the place of incorporation and principal place of business,

---

sufficient contacts with this judicial district. Accordingly, the venue analysis is subsumed by the jurisdictional analysis, which Hasbro has fully briefed here.

[3] In an "exceptional case," a corporate defendant's operations in a forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139

the Supreme Court observed that "a corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 1559.

Hasbro's connections with Colorado do not create general jurisdiction. Hasbro is incorporated and has its principal place of business in Rhode Island. Turner Decl., ¶ 3. It has no physical presence in Colorado at all, and has no connection to Colorado other than the fact that its goods are sold by retailers in the state. *Id.,* ¶¶ 9-12. As such, general jurisdiction does not exist. *See, e.g., BNSF*, 137 S. Ct. at 1558 (finding district court lacked personal jurisdiction over railroad even though it had over 2,000 miles of railroad track and more than 2,000 employees in Montana).

### 3. The Court Lacks Specific Jurisdiction Over Hasbro

Specific jurisdiction is proper if: (1) the out-of-state defendant "purposefully directed" its activities at residents of the forum state, and (2) the plaintiff's alleged injuries "arise out of or relate to those activities." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020) (internal quotation marks omitted). Here, both prongs of the minimum contacts analysis are lacking.

The Tenth Circuit has identified four types of frameworks that may be utilized when analyzing whether a non-resident defendant has "purposefully directed" activities at forum residents: (1) continuing relationships with the forum state; (2) harmful effects in the forum state; (3) deliberate exploitation of the forum state's market; and (4) stream-of-commerce. *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905 & 909 n. 21 (10th Cir. 2017). Because no contracts are at issue here, Hasbro has no "continuing relationships and obligations with citizens

---

n. 19 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). No such allegations exists here.

of" Colorado that implicate Buck's claims. *Id.* at 905. As such, this framework does not apply. *Id*. The "harmful effects" test, meanwhile, also does not apply because Buck can point to no "intentional conduct [by Hasbro that] targets and has substantial harmful effects" in the state. *Id.* at 907.

Under the market exploitation framework, meanwhile, a defendant's actions must be more than "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 (1984). Rather, the defendant must have "continuously and deliberately exploited the … market" in a manner specific to the plaintiff's claims before it can "reasonably anticipate being hauled into court." *Id*. Similarly, under the stream-of-commerce theory, a plaintiff must show that the defendant specifically targeted the state with its efforts; the creation of a nationwide distribution system or marketing plan, for example, is insufficient to demonstrate minimum contacts with the state. *See Fischer v. BMW of N. Am., LLC*, 376 F. Supp. 3d 1178, 1186 (D. Colo. 2019).

Here, Hasbro's only involvement with Colorado is that retailers sell its products in the state. In so doing, however, Hasbro neither targets Colorado nor Colorado residents in particular. Turner Decl., ¶ 11. *See Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) (courts must "look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state."). In any event, those sales have no connection to Buck's demand for permission to use Hasbro's copyrights. Accordingly, Buck cannot meet the "purposeful direction" prong.

Buck also cannot satisfy the "arising out of" prong because Buck's claims do not arise out of Hasbro's activities in the state. For this prong, the relevant consideration is "whether the plaintiff can establish that the claimed injury resulted from the defendant's forum-related

activities." *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013). Here, the sale by retailers of Hasbro's products did not result in any harm to Buck. Any alleged harm to him arose from Hasbro's decision – made and communicated by employees based in Rhode Island – to not provide the desired consent. Turner Decl., ¶¶ 4-7. The Court therefore should dispose of this case on personal jurisdiction grounds.

### B. This Court Lacks Subject Matter Jurisdiction Over Buck's Claims

#### 1. The Legal Standard

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As such, declaratory judgment actions must satisfy the Article III case or controversy requirement, just as any case must. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937) (upholding constitutionality of Declaratory Judgment Act by interpreting the Declaratory Judgment Act to require an Article III case or controversy). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Further, even where a plaintiff has established a case or controversy, the Declaratory Judgment Act provides only that a court "*may* declare the rights and other legal relations of any interested party," not that it *must* do so. 28 U.S.C. § 2201(a) (emphasis added). "This text has

- 9 -

#81492450_v3

long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.*

### 2. Buck's Claims Do Not Present an Actual Case or Controversy

In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), the Supreme Court held that, to state a case or controversy in a declaratory judgment suit, a plaintiff's claim must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and must be "'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune,* 549 U.S. at 127. Put differently, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

The Tenth Circuit first applied the reasoning of *MedImmune* in *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236 (10th Cir. 2008), a declaratory judgment case involving claims of trademark infringement and unfair competition.[4] In that case, over the course of several years, the defendant sent multiple cease and desist letters alleging a "likelihood of confusion" and "actual confusion," threatened litigation on multiple occasions, and initiated five separate cancellation and opposition proceedings in the Trademark Office in response to the plaintiff's trademark applications. *See Surefoot*, 531 F.3d at 1238-39, 1244-45. Under those facts, the Court held that "we cannot help

---

[4] Although *Surefoot* involved trademarks and this case involves copyrights, the Tenth Circuit in *Surefoot* found "no persuasive reason why the interpretation of the Declaratory Judgment Act's terms depends on the nature of the intellectual property right at issue, and nothing in *MedImmune*'s analysis suggests one." *Surefoot*, 531 F.3d at 1243.

but conclude that the parties before us have a dispute that is definite and concrete that would admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id*. at 1245 (internal quotations omitted).

Unlike in *Surefoot,* Hasbro has taken no steps to affirmatively assert its rights as the copyright owner. *See Adirondack Cookie Co. v. Monaco Baking Co*., No. 11 Civ.1048, 871 F.Supp.2d 86, 91–92, 2012 WL 1640565, at *5 (N.D.N.Y. May 9, 2012) ("[A] justiciable controversy requires some affirmative act by the [declaratory defendant], such as 'creating a reasonable apprehension of an infringement suit,' 'demanding the right to royalty payments,' 'or creating a barrier to the regulatory approval of a product that is necessary for marketing.'"). Hasbro has not threatened a lawsuit, complained of Buck's conduct and activities, or indeed taken any affirmative action at all. Rather, Hasbro merely declined to grant Buck the permission he sought. Compl., ¶¶ 22-23. In essence, Buck sought guidance from Hasbro as to whether some product he planned to create in the future could subject him to liability for copyright infringement if Buck had the product made. *Id*., ¶¶ 22-26. When Hasbro refused to provide that guidance, Buck filed this suit, asking this Court to provide that guidance instead.

Seeking guidance for future activities, however, is exactly the type of advisory opinion that does not present a justiciable case or controversy. *See MedImmune,* 549 U.S. at 127; *Prasco, LLC v. Medicis Pharm. Corp*., 537 F.3d 1329 (Fed. Cir. 2008) (finding manufacturer's purely subjective fear of future infringement suit did not create actual case or controversy); *Windstream Servs., LLC v. BMG Rights Mgmt. (US) LLC*, No. 16CIV5015KMWRLE, 2017 WL 1386357, at *9 (S.D.N.Y. Apr. 17, 2017) (not reported) (finding no actual case or controversy where the plaintiff sought an

advisory opinion on the defendants' notices and whether the plaintiff qualified for DMCA safe harbor provisions); *Micro Focus (US), Inc. v. Genesys Software Sys., Inc.*, No. CV 14-14049-NMG, 2015 WL 4480358, at *3 (D. Mass. July 21, 2015) (not reported) (finding no subject-matter jurisdiction over a counterclaim for declaratory judgment of non-infringement where the counter-claimant alleged no facts to indicate that the counter-defendant had raised, or even threatened to raise, a patent or copyright infringement claim with respect to the software at issue); *Team Angry Filmworks, Inc. v. Geer*, 214 F. Supp. 3d 432 (W.D. Pa. 2016) (finding no actual case or controversy in a declaratory judgment action for copyright infringement where the company made only nebulous allegations that the development of the film was well underway). Because that guidance is all that Buck seeks, he has failed to state an actual case or controversy, and this Court therefore does not have subject-matter jurisdiction.

### C. Buck's Claims Fail as a Matter of Law

Buck claims that his anticipated purchase of the Transformers Pads: (1) constitutes fair use; and (2) does not infringe Hasbro's copyrights. Both are wrong as a matter of law.

#### 1. Buck's Allegations Do Not Constitute "Fair Use" as a Matter of Law

##### a. The Legal Standard for Fair Use

In order to fulfill "copyright's very purpose, '[t]o promote the Progress of Science and useful Arts,'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994) (quoting U.S. Const., Art. I, § 8, cl. 8.5), the Copyright Act provides that "the fair use of a copyrighted work . . . is not an infringement of copyright." 17 U.S.C. § 107. In determining whether a use is fair, four factors are considered:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S. Code § 107. All four factors "are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578. Each of the factors weighs heavily against fair use.

### b. Factor 1: The Purpose and Character of the Use

The Supreme Court has characterized the analysis of the first factor as follows:

> The central purpose of this investigation is to see, in Justice Story's words, whether the new work merely "supersede[s] the objects" of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative."

*Campbell*, 510 U.S. at 578-79 (citations omitted).

The Transformers Pads are in no way transformative. To be transformative, the use of the copyrighted artwork must, at a minimum, add "new expression, meaning or message." *Campbell*, 510 U.S. at 579. No such expression, meaning or message can be found here. Examples of transformative works include, for example, uses of works "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research." 17 U.S.C. § 107. Buck's desire to buy hockey pads with Transformers images on them hardly comports with those examples. Rather, Buck wishes to purchase sports equipment that, by its nature, uses and is evocative of Hasbro's copyrighted works. Compl. ¶¶ 2, 13, 17-19, 37. But the mere copying of artwork onto sports equipment does not, as a matter of law, make a work transformative. *See, e.g., Lucasfilm Ltd. v. Ren Ventures*, 2018 WL 5310831 (N.D. Cal. June 29,

2018) ("[M]oving material to a new context is not transformative in and of itself—even if it is a sharply different context. . . . Here, defendants merely reposted images and dialogue from the original works with 'minor cropping [or] the inclusion of headlines or captions' which cannot transform the copyrighted works into something new."); *American Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 923-924 (2d Cir. 1994) ("Texaco's photocopying merely transforms the material object embodying the intangible article that is the copyrighted original work … Texaco's making of copies cannot properly be regarded as a transformative use of the copyrighted material.").

Where a transaction is, like here, commercial in nature, *see* Compl. ¶ 16 ("Money made will be made on the sale of the hockey pads"), and the work is non-transformative, this factor weighs heavily against fair use.[5] *See Gen. Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158, 1182 (D. Colo. 2015) (holding that a non-transformative commercial use was not fair use); *Dr. Seuss Enterprises, L.P. v. ComicMix LLC,* No. 19-55348, 2020 WL 7416324, at *7 (9th Cir. Dec. 18, 2020) ("Although ComicMix's work need not boldly go where no one has gone before, its repackaging, copying, and lack of critique of Seuss, coupled with its commercial use of *Go!*, do not result in a transformative use.").

    c.  **Factor 2: Nature of the Copyrighted Work**

The second statutory factor – "the nature of the copyrighted work" – "recognizes that creative works 'are closer to the core of intended copyright protection' than informational and other works, 'with the consequence that fair use is more difficult to establish when the former works are copied.'" *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th

---

[5] The fact that Buck would be providing the artistic rendering to the retailer, or that he would use the hockey pads personally thereafter, *see* Compl., ¶¶ 1, 9, 16, 24, 35, does not change the fact that he is buying a product with Hasbro's copyrighted material on it.

Cir. 1997) (quoting *Campbell*, 510 U.S. at 586). Here, the copied designs are creative pictorial and graphic works, such that this factor again weighs against fair use. *Id.*

### d. Factor 3: Amount of Copyrighted Work Used

With regard to the third factor – "the amount and substantiality of the portion used in relation to the copyrighted work as a whole" – the Supreme Court has held that "the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression." *Harper & Row*, 471 U.S. at 565.

Here, the third factor strongly weighs against fair use because, as Buck has admitted, he wishes to substantially copy Hasbro's copyrighted images. Compl., ¶¶ 13 ("In conceiving the designs of the hockey pads, Buck selected designs and patterns that were evocative of the cartoon show he had watched in his youth"); 17-19. Indeed, that is the whole point of his desired activity. Further, as shown in the side-by-side comparison attached to the Turner Decl. at Exhibit A, Buck would like to use images taken directly from key portions of Hasbro's copyrighted works.[6]

### e. Factor 4: The Effect of the Use on the Potential Market

The fourth factor – "the effect of the use upon the potential market for or value of the copyrighted work" – seeks to limit fair use to "copying by others which does not materially impair the marketability of the work which is copied." *Harper & Row*, 471 U.S. at 566-67. For this

---

[6] As noted *infra*, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be converted to a motion for summary judgment if the Court considers matters outside of the pleadings. *See* Fed. R. Civ. P. 12(d). Hasbro believes that this Court can dispose of Buck's claims under Fed. R. Civ. P. 12(b)(6), without converting it to a motion for summary judgment, because even without considering the actual copyrighted material, the factors way so heavily in favor of Hasbro that judgment on the pleadings is warranted. *See Bell v. Magna Times, LLC*, No. 2:18CV497DAK, 2019 WL 1896579, at *4-5 (D. Utah Apr. 29, 2019)(granting motion to dismiss on the basis of fair use).

factor, however, it is important to note that the proper inquiry is whether the challenged use, *should it become widespread*, "would adversely affect the potential market for the copyrighted work." *Id.* at 568.

Essentially, Buck argues in the Complaint that, because Hasbro is not presently selling Transformers-branded sporting equipment, he should be able to engage in a commercial transaction for that purpose. Compl., ¶¶ 11, 12, 32, 36. But that argument focuses improperly on the singular transaction, and not the risk of widespread use. Needless to say, if anyone were free, as Buck suggests, to create their own Transformers-branded sporting equipment, Hasbro's market for its Transformers-branded goods would be substantially and adversely impacted. As such, the fourth factor strongly favors a finding of no fair use.

Because all four factors strongly weigh against a finding of fair use, Buck fails to state a plausible claim for declaratory judgment of non-infringement based upon that defense.

### 2. Buck Concedes Infringement of Hasbro's Copyrights

A copyright claim consists of two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "The copying element of an infringement claim has two components. First, a plaintiff must demonstrate that the defendant copied the plaintiff's work 'as a factual matter.' Second, the plaintiff must establish 'substantial similarity' between the allegedly infringing work and the elements of the copyrighted work that are legally protected." *Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012).

- 16 -
#81492450_v3

As an initial matter, Buck brings this action for the express purpose of seeking permission to copy Hasbro's Transformers copyrights. By the very nature of the claim, therefore, Buck concedes infringement.

In any event, Buck's designs infringe Hasbro's copyrights as a matter of law. First, Buck concedes that Hasbro owns copyrights in the designs underlying the Transformers Pads. Compl. ¶¶ 13, 34. Second, Buck concedes that he wishes to directly copy the copyrighted works. Compl. ¶¶ 13, 17-19, 35, 37. Third, as shown in the side-by-side comparisons at Exhibit A to the Turner Decl., Buck's designs show "similarities that, in the normal course of events, would not be expected to arise independently." *Civility Experts Worldwide v. Molly Manners, LLC*, 167 F. Supp. 3d 1179, 1190 (D. Colo. 2016). As that comparison also shows, the portions that are copied "comprise a substantial part of the [copyrighted work] when it is considered as a whole." *Id.* at 1191. As such, Buck fails to state a claim for a declaratory judgment of non-infringement.

## V. CONCLUSION

For the reasons set forth above, Hasbro respectfully requests that the Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and, alternatively, 12(b)(6).

Dated: March 1, 2021.

Respectfully submitted,

HOLLAND & KNIGHT LLP

*/s/ Joshua C. Krumholz*
Joshua C. Krumholz
10 St. James Avenue
Boston, MA 02116-3889
Telephone: (617) 523-2700
Facsimile: (617) 523-6850
Email: joshua.krumholz@hklaw.com

*/s/ Shay Powell Talbitzer*
Shay Powell Talbitzer
1801 California Street, Suite 5000
Denver, CO 80202
Telephone: (303) 974-6642
Facsimile: (303) 974.6659
Email: shay.talbitzer@hklaw.com

*Attorneys for Defendant HASBRO, INC.*

## CERTIFICATE OF SERVICE

    I hereby certify on this 1st day of March, 2021 a true and correct copy of the foregoing document **HASBRO, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV P. 12(b)(1), 12(b)(2) AND, ALTERNATIVELY, 12(b)(6)** was efiled and electronically served via the CM/ECF system on the following:

Matthew Buck
RED LAW
144 West 11th Avenue
Denver, CO 80204
matt@red.law
*Pro Se Plaintiff*

*/s/ Shay P. Talbitzer*
Shay P. Talbitzer
