# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-3382-WJM-MEH

MATTHEW BUCK,
Plaintiff v.

HASBRO, INC.,
Defendant

---

PLAINTIFF'S RESPONSE TO THE DEFENDANT'S FRCP 12 MOTIONS

---

On November 13, 2020 Plaintiff filed this action in the United States District Court, District of Colorado [CM/ECF Doc #1]. On January 12, 2020, Defendant filed its first motion to dismiss. [CM/ECF Doc #21]. On February 25, 2021 Plaintiff amended his original complaint to clarify certain jurisdictional issues identified by Defendant. [CM/ECF Doc #28] ("Amended Complaint"). On March 1, 2021, Defendant renewed its motion to dismiss for lack of jurisdiction or venue change. [CM/ECF Doc #33] ("Motion").

Plaintiff, *Pro Se*, hereby responds to Defendant's Motion and respectfully moves the court to deny Defendant's motion to dismiss for lack of jurisdiction.

## **ARGUMENT**

### I.  Standard Of Review.

To defeat a Rule 12 (b)(2) motion to dismiss where an assessment of personal jurisdiction is made based on the complaint and affidavits, a plaintiff need only make prima facie showing of personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts*, Inc. 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). A plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that, if true, would support the exercise of personal jurisdiction over the defendant. *OM/ Holdings, Inc. v. Royal Ins.Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). In considering whether a plaintiff has met the required prima facie showing of personal jurisdiction over the defendant, the court must accept all well pleaded facts as true, and must resolve any factual disputes in favor of the plaintiff. See *Wenz*, 55 F.3d at 1505.

## II. Plaintiff Has Established Personal Jurisdiction Over Defendant in Colorado Because Plaintiff s Claim Arises Out Of Defendant's Purposeful Distribution and Sale of Infringing Products in Colorado.

To establish personal jurisdiction over an out-of-state defendant, the plaintiff must make a prima facie showing that "jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *Employers Mut Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1159 (10th Cir. 2010) (quotation marks omitted). Because Colorado's long-arm statute confers maximum jurisdiction permitted by constitutional due process, *Archangel Diamond Corp. v.Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005), the only question is whether the court's exercise of personal jurisdiction comports with due process. *Dudnikov*, 514 F.3d at 1070.

Even though a defendant's contacts with the forum state may not support general jurisdiction, the less stringent standard for specific jurisdiction is met if the defendant's contacts with the forum state are sufficiently related to the cause of action. *Daimler AG v. Bauman*, 571U.S.117, 134 S. Ct 746, 754 (2014). Specific jurisdiction calls for a two-step inquiry: (1) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and if so, (2) whether the defendant has presented a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471U.S. 462, 476-77, 105 S.Ct 2174 (1985); *Shrader v. Biddinger*, 633 F.3d 1235, 1239-40 (10th Cir. 2011).

The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (1) that the defendant must have "purposefully directed its activities at

residents of the forum state," and (2) that the plaintiff's injuries must "arise out of [the] defendant's forum-related activities." *Shrader*, 633 F.3d at 1239. As set forth in more detail below, Plaintiff has established both requirements of the minimum contacts test, and has therefore met its burden in establishing its prima facie case of personal jurisdiction.

A. **Defendant Has Purposefully Directed Activity at Residents of Colorado by Advertising, Distributing and Selling Its Products in the Forum State.**

The purposeful direction requirement "ensures that a defendant will not be subject to the laws of a jurisdiction 'solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person.'" *AST Sports Sci., Inc.v.CLF Distribution Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008) (quoting *Benal-{y v.Amon Carter Museum o/ W.Art*, 858 F.2d 618, 625 (10th Cir. 1988)). However, Defendant's conduct was not random, fortuitous, or attenuated-this was not a one-off purchase of a product via the internet. Instead, the totality of Defendant's activities, voluntarily taken, constitute a purposeful direction of activity in the state of Colorado.

In support of its motion to dismiss for lack of personal jurisdiction, Defendant offers an affidavit by its chief executive officer detailing its lack of physical presence in Colorado. [CM/ECF Doc #33]("Turner Declaration"). However, courts have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction where a commercial actor's efforts are purposefully directed toward residents of another State *Dudnikov*, 514 F.3d at 1077. Furthermore, a commercial actor cannot avoid personal jurisdiction merely by asserting it has not tailored its products to any one state, as

proposed by the defendant. See *Etchieson v. Central Purchasing*, LLC., 232 P.3d 301, 307 (Colo. Ct. App. 2010).

Defendant is a manufacturer that distributes its products nationwide via wholesale distribution agreements, online store-fronts, and national print and mail catalog retailers. Amended Complaint ¶ 4-6; Turner Declaration ¶ 11. By advertising and distributing its products nationwide, Defendant cannot and does not argue it had no reasonable expectation or knowledge that their products will be sold in Colorado. Instead, Defendant advertises and distributes its products nationwide presumably with the expectation that their products will be purchased in Colorado, and which are in fact purchased in Colorado. Amended Complaint ¶ 4, 6.

The affidavit offered by Defendant states that Defendant does not specifically target Colorado. However, Plaintiff alleges in its Complaint that Defendant advertises to the United States market as a whole, including Colorado, by advertising its products on platforms such as amazon.com and Defendant's products are for sale at every national retailer of toys. Turner Affidavit ¶ 11 admitting that Hasbro's products may be bought online and admitting that Hasbro products are for sale at local retailers. Taking Plaintiff's well-plead allegations as true, Defendant advertises its products to Colorado residents. Simply because these advertising activities were directed toward the United States market generally, rather than toward the Colorado market exclusively, does not make Defendant's direction of its activities to the Colorado market any less purposeful.

Furthermore, Defendant's sale of Transformers products in Colorado is purposeful and intentional conduct, aimed. Hasbro's products being sold in Colorado is not accidental conduct in the state of Colorado. Hasbro admits in the Turner declaration that "Hasbro

5

may, from time to time, retain temporary workers or independent contractors to help retailers in the state during the holiday season, as Hasbro sometimes does in states throughout the country. "Turner affidavit at ¶ 11. Further, here, as in *Dudnikov*, there is no meaningful dispute that Plaintiff's injury was suffered entirely in Colorado. *Dudnikov*, 514 F.3d at 1077.

Defendant's Motion and supporting Turner Declaration focus nearly exclusively on the fact that Hasbro does not own property in the state of Colorado, and only sometimes employs people in Colorado, while ignoring other activities such as national advertising campaigns and its distribution agreements with contemplated brick and mortar sales. Furthermore, Defendant's active marketing and sales efforts in Colorado, involving supplemental employees and a statewide presence in Colorado is not a passive website like those at issue in the precedent relied upon by Defendant it its Motion. See e.g. *Old Republic Ins. Co. v. Cont'l Motors, Inc.,* 877 F.3d 895, 900 (10th Cir. 2017). Instead, Defendant is actively involved with the marketing and sale of their products all across the state, employing Hasbro workers to ensure that their products are in stock across the state.

Even if Defendant has only sold the infringing products indirectly in Colorado through distributors and online storefronts, such activity is nonetheless purposeful direction because Defendant advertised the infringing products over the internet and through nationally circulated catalogues Defendant had agreements with its distributors that contemplated sales in Colorado, and the distributors sold the infringing products in Colorado. By nature of this conduct, Defendant undertook intentional actions that were expressly aimed at the forum state, and merely used third-party distribution channels to

do so. Defendant has therefore purposefully directed its activity towards residents of Colorado, and thus the first requirement for minimum contacts has been established.

**B. Plaintiffs Claim for Relief Arises Out Of Defendant's Distribution and Sale of Products in Colorado.**

Step two of the minimum contacts test requires the determination of whether the plaintiff's injuries "arise out of" the defendant's forum-related activities. *Shrader*, 633 F.3d at 1239. Courts that have interpreted the "arising out of" language have required some sort of causal connection between a defendant's contacts and the suit at issue. *Dudnikov*, 514 F.3d at 1078.Thus, a court may exercise specific jurisdiction over a claim when there is an affiliation between the forum and the underlying controversy. Bristol-*Myers Squibb Co. v. Super Ct of Cal.,* 137 S.Ct. 1773, 1781(2017).

Defendant argues that the activities constituting infringement and thus forming the basis of this action occurred exclusively in Rhode Island, where Defendant is located.

Plaintiff has alleged that the injuries arise out of Hasbro's authority, and ability, to effectively protect its copyrights across the country. The copyright infringing pads will be constructed in Canada, which obviously cannot be the appropriate court having jurisdiction over this matter. The copyright infringing materials are sold in Colorado, purposefully, by Defendant, and the hockey pads that Plaintiff seeks to have made will be used in Colorado – and any suit filed against the Plaintiff for infringement, by the Defendant, would occur in Colorado.

Plaintiff has made well-plead factual allegations that unlawful sale of the infringing products will occur in Colorado. Amended Complaint ¶¶ 9,16,17. Furthermore, Plaintiff

has alleged that he will suffer damages as a direct result of Defendant's copyright-related activity and contacts with Colorado. Because the injuries alleged by Plaintiff arise out of Defendant's contacts with the forum state, the required nexus between Defendant's forum-related contacts and Plaintiff's claim is satisfied.

Plaintiff has met their burden of establishing "minimum contacts" - Defendant's conduct was purposefully directed at Colorado and this lawsuit arises out of Defendant's contacts with Colorado. Accordingly, Defendant's motion to dismiss for lack of jurisdiction should therefore be denied.

## III. Defendant Has Not Made a Compelling Case That Would Render Colorado's Exercise of Jurisdiction Unreasonable.

Once minimum contacts are established, it is incumbent on Defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Dudnikov*, 514 F.3d at 1080. The determination of whether jurisdiction is reasonable is determined by considering the following factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. *Pro Axess, Inc. v.Orlux Distribution, Inc.,* 428 F.3d 1270, 1279-80 (10th Cir. 2005).

None of these factors, separately or in combination, weigh definitively in favor of Defendant. Because Defendant has failed to present a compelling case that this Court's exercise of jurisdiction over Defendant would be unreasonable, Defendant's motion to dismiss for lack of jurisdiction must be denied.

## A.     The Burden on Defendant of Defending in Colorado is Minimal.

"[T]he burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." *OMI Holdings,* 149 F.3d at 1096. However, modern transportation and communication have significantly lessened the burdens of litigating in a distant forum. Burger King, 471U.S.at 474, 105 S.Ct. 2174. In this case, there appear to be two potential fora for this lawsuit: Colorado and California. There are witnesses for Plaintiff and Defendant located in both locations. The burden on Defendant of coming to defend in Colorado is not materially different from the burden on Plaintiff of going to California to prosecute the case. As the Tenth Circuit has said:

> *As in any case in which the parties reside in different fora, one side must bear the inconvenience of litigating "on the road." Defendant has not indicated*
>
> *that its defense of this case would be hindered by the territorial limits on the Colorado district court's power to subpoena relevant witnesses, or hampered in any other significant way.*

*Dudnikov*, 514 F.3d at 1081.

Forcing Defendant to litigate this dispute in Colorado is neither so comparatively unfair or inconvenient that it would rise to a violation of due process. Defendant's burden is relatively minimal-even if this factor weighs in Defendant's favor, it is only minimally so, and this factor therefore fails to demonstrate a compelling case that the exercise of personal jurisdiction over Defendant is unreasonable.

### B.     Colorado Has Clear Interest in Adjudicating the Dispute.

States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors. *OM/ Holdings*, 149 F.3d at 1096.

Here, Plaintiff is a Colorado resident, and the state has an interest in providing a forum for their suit against Defendant. This factor therefore weighs in favor of Colorado's exercise of jurisdiction over Defendant.

### C.     Plaintiff s Interest in Convenient Relief Outweighs The Minimal Burden on Defendant

The third step in the reasonableness inquiry hinges on whether Plaintiff may receive convenient and effective relief in another forum. *OM/ Holdings*, 149 F.3d at 1097. "This factor may weigh heavily in cases where a Plaintiff s chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming to practically foreclose the pursuit of the lawsuit." *Id.* As this suit is governed by federal law, this factor weighs only slightly in favor of Colorado's exercise of jurisdiction over Defendant, but nonetheless does nothing to support a finding that the exercise of such jurisdiction would be unreasonable. The burden of fighting the suit in Rhode Island would be nearly impossible for the Plaintiff, as he is not licensed in Rhode Island, and Hasbro has already hired competent Colorado counsel, familiar with the local rules of this court.

### D.     Colorado is the Most Efficient Forum to Litigate the Dispute.

The fourth factor in the reasonableness inquiry is whether the forum state is the most efficient place to litigate the dispute. Key to this inquiry are the location of witnesses,

where the wrong underlying the suit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation. *OM/ Holdings*,149 F.3d at 1097.

The Defendant did not address this factor in their motion to dismiss. Plaintiff though, asserts that the pads will be used in Colorado, sold in Colorado, and that witnesses are likely. Should the court deny the motion to dismiss, this case will likely be decided on its merits through competing briefs by the parties. Even if Defendant's home-state forum is an efficient place to litigate the dispute, such forum is not more efficient than Colorado, and this factor therefore weighs in favor of Colorado exercising personal jurisdiction over Defendant

## E. Colorado's Exercise of Personal jurisdiction Does Not Affect Fundamental Social Policies of the Several States.

This case will be decided solely under federal copyright law-the merits of this dispute are wholly unrelated to Rhode Island substantive law. As Colorado's exercise of personal jurisdiction would not affect Rhode Island's policy interests, this factor therefore weighs in favor of Colorado's exercise of personal jurisdiction over Defendant.

In sum, these five factors do not weigh in Defendant's favor. It cannot be said that requiring Defendant to answer for its actions in Colorado is unfair. Because Defendant has failed to make a compelling case that the exercise of jurisdiction by a Colorado court would be unreasonable, Defendant's motion to dismiss for lack of jurisdiction must be denied.

## IV. Venue is Proper Because Defendant is Subject to Personal Jurisdiction in Colorado.

There is no dispute that Plaintiffs claim under the Copyright Act is governed by the venue provisions of 28 U.S.C. § 1400(a).

Thus, venue is proper in any district in which Plaintiff resides. 28 U.S.C. § 1400(a). For purposes of venue, a defendant is deemed to reside in any judicial district in which such defendant is subject to the court's personal jurisdiction. 28 U.S.C. §1391(c)(2). As established above, Defendant is subject to personal jurisdiction in Colorado, and venue is therefore proper in this district. Accordingly, Defendant's request to transfer venue or motion to dismiss for improper venue should be denied.

Defendant markets, distributes, and sells its products across Colorado. Defendant admits to sporadically employing people in the state of Colorado. Even if the court finds that specific jurisdiction has not been established, general jurisdiction is easily proved here. Hasbro's contacts with this jurisdiction include selling or attempting to sell its goods to customers residing in Colorado, providing internet users in Colorado access to its interactive website at which they can obtain information to order Hasbro's products, and contracting, or attempting to contract, with Colorado residents for the sale of its products through Hasbro distributors based in Colorado. See *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455-56 (10th Cir. 1996) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). " *Gennie Shifter, Llc. v. Lokar, Inc., Civil Action No. 07-cv-01121*, at *3 (D. Colo. Jan. 12, 2010).

## V. This court axiomatically has Subject Matter Jurisdiction Over This Claim

"[T]he Declaratory Judgment Act does not demand that a district court decide every declaratory suit brought to it even where the court has the power to do so. Instead, once the court is satisfied that Article Ill's jurisdictional requirements are met, it must then consider a number of factors, including those previously set out by this court in *Mhoon*, to determine whether the suit warrants the district court's attention. These factors include:

[1]whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5]whether there is an alternative remedy which is better or more effective.

*State Farm Fire Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

Here, a declaratory judgment that the Plaintiff's work is fair use would settle the controversy, estopping Defendant from suing the manufacturer or retailer, or the Plaintiff, for copyright violation. The second and third factors are inapplicable in the current matter. There is no friction here between the state and federal courts, as this is a matter between diverse parties, and the matter at hand is a federal question. As to the last factor, the Plaintiff already tried to receive a letter for permission to create the pads, and was denied by the Defendant. Pursuant to the holding of *Surefoot,* whether the

Plaintiff has a reasonable apprehension that Hasbro will sue him is not material to this case, and Hasbro's assertion that they will not enforce copyright against him is not enough to declare that there is no case or controversy here.

**VI. There Is An Existing Controversy, Which Hasbro Admits.**

Hasbro cannot claim that there is not a case and controversy, and that the Plaintiff has infringed upon the Defendant's copyright. If the Plaintiff has not infringed upon the Defendants copyright, then the case is merely theoretical, and thus the need for this action arises. ""[T]he phrase 'case of actual controversy' … refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III [of the U.S. Constitution]." *MedImmune, Inc. v. Genentech, Inc.* , 549 U.S. 118, 126, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007)." *Cocona, Inc. v. Sheex, Inc.,* 92 F. Supp. 3d 1032, 1035 (D. Colo. 2015). Here, Buck has contracted with a retailer and a manufacturer to manufacture Hockey Pads, which he has designed himself, and has attempted to purchase them. But for Hasbro's refusal to grant permission, the pads would exist and be in use.

"[T]he question in each case is whether the facts alleged, under all the circumstances, show there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal Oil Co., 312 U.S. 270 (1941)* at 273.*Phillips Performance Nutrition, LLC v. Bayer Healthcare*, Civil Action No. 07-cv-1982-JLK, at *3 (D. Colo. Sep. 3, 2008). Here, the infringement is not theoretical, the Plaintiff is not expressing a mere desire, he has contracted with a manufacturer and

retailer to produce pads that if they were made, would subject all parties to copyright litigation.

**VII. The Plaintiff's Work Are Fair Use**

Whether "fair use" exists involves a case-by-case determination using four non-exclusive, statutorily provided factors in light of the purposes of copyright. *Harper Row, Publishers, Inc. v. Nation Enters.*,471 U.S. 539, 549, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). The factors are: (1) "the purpose and character of the use;" (2) "the nature of the copyrighted work;" (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole;" and (4) "the effect of the use upon the potential market for or value of the copyrighted work." *17 U.S.C. § 107.* "The ultimate test of fair use . . . is whether the copyright law's goal of promoting the Progress of Science and useful Arts would be better served by allowing the use than by preventing it." *Castle Rock Entm't, Inc. v. Carol Publ'g Group*,150 F.3d 132, 141 (2d Cir. 1998) (internal citations and quotation marks omitted). *Bill Graham Archives v. Dorling Kindersley*, 448 F.3d 605, 608 (2d Cir. 2006).

### A. The Purpose And Character Of the Use Is Non-Commercial And Nonprofit

The (more) critical inquiry under the first factor and in fair use analysis generally is whether the allegedly infringing work "whether the allegedly infringing work "merely supersedes" the original work "or instead adds something new, with a further purpose or different character, altering the first with new . . . meaning or message," in other words "whether and to what extent the new work is `transformative.'" *Castle Rock Entertain. v. Carol Publish. Group*, 150 F.3d 132, 142 (2d Cir. 1998). Here, the Plaintiff

has turned a beloved children's cartoon into hockey equipment. He is not creating an analogous work, inserting the cartoons into another cartoon, or the characters into a cartoon of his own. Whether the Defendant finds the Plaintiff's work to have merit is immaterial, and the Plaintiff will not mislead this court into believing that the Plaintiff is asserting that the Hockey Pads are art. They are intended to be a functional tribute to a childhood memory, and they exist in a market that the Defendant does not exist or compete in. The Hockey pads will not be displayed publicly, nor be part of a commercial exhibit or property. They will be seen by at most two competing hockey teams and few if any spectators. The purpose of the infringing works though *is* transformative. Transformers exists to entertain, tell stories, and most of all to make money for Hasbro. The Hockey pads do not make money for the Plaintiff, and they do not make money for the manufacturer or retailer. The graphics designed by the Plaintiff are not a source of profit for anyone involved – the material involved in making the pads is, but that that profit would exist whether the infringing materials were of the Transformers or of nonsensical designs. The use here is transformative because it takes the Transformers characters and turns them into a new mode of presentation, the presentation does not need to be political or artistic. *See* Castle Rock at 143.

## B. Because The Works Are Transformative, The Nature Of The Copyrighted Work Is Not a Useful Factor For The Court To Consider

The second statutory factor is "the nature of the copyrighted work." 17 U.S.C. § 107(2). It "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586, 114 S.Ct. 1164.

*Blanch v. Koons*, 467 F.3d 244, 256 (2d Cir. 2006). While this factor is often difficult for the infringer to deal with, here, because the work is transformative, the Plaintiff asserts that this factor is less of an issue in this case. Because the Plaintiff seeks to create hockey pads of a cartoon, the universes in which the copyrighted work and the infringing work at existing are not near one another. "The second factor may be of limited usefulness where the creative work of art is being used for a transformative purpose. To paraphrase *Bill Graham Archives*, the second fair-use factor has limited weight in our analysis because Koons used Blanch's work in a transformative manner to comment on her image's social and aesthetic meaning rather than to exploit its creative virtues." (Internal citations removed). *See Bill Graham Archives*, 448 F.3d at 612-13. *Blanch v. Koons*, 467 F.3d 244, 257 (2d Cir. 2006). Here, the Plaintiff's work is not commentary, but is so transformative as to not be an analogous work. The products themselves will obviously be using the Defendant's copyrighted work, but their nature will be so separate as to ally any fears that the Plaintiff's work could be confused with the nature of the Defendants copyrighted work.

### C. The Amount and Substantiality of the Portion Used Is Necessary And Does Not Weigh Against Fair Use

"The third fair use factor asks the court to examine "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3)." Bill Graham Archives v. Dorling Kindersley, 448 F.3d 605, 613 (2d Cir. 2006). Here, the use and nature of the work is both transformative, and evocative of the Defendant's copyrighted work. "[C]ourts have concluded that such copying does not necessarily weigh against fair use because copying the entirety of a work is sometimes necessary to

make a fair use of the image. *See Kelly*, 336 F.3d at 821" *Bill Graham Archives v. Dorling Kindersley*, 448 F.3d 605, 613 (2d Cir. 2006). Without use of the copyrighted image, the Plaintiff's goal would not be accomplished. "[E]ven though the copyrighted images are copied in their entirety, the visual impact of their artistic expression is significantly limited because of their reduced size." *Id.* Here, of the three pieces of copyrighted material, only the Optimus Prime work is substantially copied from the original source material. The Soundwave and Bumblebee products (¶ 27-28) are merely evocative of the original works. Furthermore, the Optimus Prime work in ¶ 29 requires that it be placed side by side in order for the work to *not* be entirely transformative. Here, because the work is so transformative[1], the third fair use factor should not weigh against fair use.

### D. The Plaintiff's Proposed Use Has No Impact On The Market For The Defendant's Work

The fourth factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The court looks to not only the market harm caused by the particular infringement, but also to whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work. *Harper*,471 U.S. at 568, 105 S.Ct. 2218. This analysis requires a balancing of "the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied." *MCA, Inc. v. Wilson*,677 F.2d 180, 183 (2d Cir. 1981). *Bill Graham Archives v. Dorling Kindersley*, 448 F.3d 605, 613 (2d Cir. 2006).

---

[1] No pun intended

Here, the Defendant's interest in the Transformers property is in licensing the IP for a variety of toys, games, movies, and cartoons. They do not engage in the sporting goods market as it relates to the Transformers, and have not certified via affidavit that they intend to. Furthermore, the Plaintiff's work is transformative, it does not exist in a space that the Defendant's work exists in, and the images used in the products are evocative of the Defendant's work, but are *not* the Defendants work. Other than the Autobot and Decepticon logo, none of the imagery used in the Plaintiff's designs are direct copies of Hasbro's actual work.

Hasbro asserts that there is some risk of widespread privately manufactured Transformers hockey equipment. The fourth factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether the unrestricted and widespread conduct engaged in by the defendant ... would result in a substantially adverse impact on the potential market for the original." *Campbell*,510 U.S. at 590, 114 S.Ct. 1164, *Hill v. Pub. Advocate of U.S.*, 35 F. Supp. 3d 1347, 1359 (D. Colo. 2014). The court therefore is limited in the behavior of the Plaintiff, not other potential tortfeasors. The Plaintiff can assert that given the high cost of this endeavor, he does not intend to repeatedly engage in the purchase of custom-made hockey pads. Furthermore, any order of this court asserting that the Plaintiff's proposed usage is fair use would prevent the Plaintiff from engaging in commercial use of the property, as that would not be fair use. Lastly, the Plaintiff re-stresses that the fourth factor is about the behavior impacting the market for the trademarked works, and as Hasbro does not currently manufacture any hockey equipment – there is no market in which the two properties would coexist.

## CONCLUSION

Plaintiff has met its burden of establishing a prima facie case of personal jurisdiction, and Defendant has failed to make a compelling case that other considerations would render the exercise of personal jurisdiction unreasonable. Furthermore, as Defendant is subject to personal jurisdiction in this district, venue is proper. Accordingly, Plaintiff Buck hereby moves the Court to deny Defendant's motion to dismiss for lack of jurisdiction or venue change. The Defendant additionally attempts to dismiss the case, and in effect has filed a quasi-motion for summary judgment, without any period of fact-finding. Accordingly, as motions to dismiss are disfavored in this District, the Plaintiff would ask that the Defendant's motion to dismiss be denied.

DATED: March 19, 2021

*/S Matthew W Buck*
*Pro Se*
144 W 11th Ave
Denver, CO 80203
matt@red.law
720-507-1884

## CERTIFICATE OF SERVICE

I, Matthew W Buck, hereby certify that on March 16, 2021, I served a copy of the foregoing **RESPONSE TO THE DEFENDANT'S MOTION TO DISMISS** upon the Defendant, through their counsel via the court's ECF filing system.

*/S Matthew W Buck*