## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-3382-WJM-MEH

MATTHEW BUCK,

      Plaintiff,

v.

HASBRO, INC.,

      Defendant.

---

## HASBRO, INC.'S REPLY IN SUPPORT OF HASBRO, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV P. 12(b)(1), 12(b)(2) AND, ALTERNATIVELY, 12(b)(6)

---

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

The defendant, Hasbro, Inc. ("Hasbro"), respectfully submits this Reply to Plaintiff's Response to the Defendant's FRCP 12 Motions [Dkt. No. 39] (the "Response") filed by the plaintiff, Matthew Buck ("Buck"), which was filed in opposition to Hasbro's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and, Alternatively, 12(b)(6) (the "Motion") [Dkt. No. 33].

## I. <u>ARGUMENT</u>

### A. **Hasbro Is Not Subject to This Court's Personal Jurisdiction**

Buck does not assert that this Court maintains general jurisdiction over Hasbro. Response at 3. And both parties agree that, to establish specific jurisdiction, Buck must make a *prima facie* showing that: (1) Hasbro "purposefully directed its activities at residents of the forum state"; and (2) his injuries "arise out of" or "relate to" Hasbro's conduct." Response at 3-4; Motion at 7. The Response fails to establish either prong.

#### 1. **Hasbro Has Not "Purposefully Directed" Activities at Colorado Residents**

"For the purposeful availment (or purposeful direction) requirement to be met, there must be some conduct that is particular to a forum." *APS Biogroup v. Sterling Tech., Inc.,* No. 19-cv-02952-RM-MEH, 2020 WL 6118751, *6 (D. Colo. April 6, 2020). As the Tenth Circuit has explained, purposeful direction may be demonstrated through "(a) an intentional action … that was (b) expressly aimed at the forum state … with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id.*, quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008).

Although it is not clear, Buck seems to argue that this requirement is met through the stream of commerce framework. Response at 4-6. The Supreme Court has spoken extensively on this framework, as explained by this Court in *APS Biogroup* at *8-9, but the Tenth Circuit has not yet "weighed in" on the proper analysis. *Id.*; *Relaxanimals, Inc. v. Brentwood Originals, Inc.*, No. 19-cv-02721-MEH, 2020 WL 1529179, *7 (D. Colo. Mar. 31, 2020). Nevertheless, as this Court observed, "district courts in this circuit have held that 'something more' than merely placing a product into the stream of commerce is required to establish minimum contacts for jurisdictional purposes." *Id.*

Nothing more has been alleged here. As Buck acknowledges, Hasbro's products are sold nationally through independent retailers. Response at 5. And Buck does not dispute that, even for on-line shoppers accessing Hasbro's website, those shoppers still must purchase Hasbro product through authorized retailers. Motion at 2. As such, the *only* behavior even arguably directed to the state involves temporary support by Hasbro of retailers during the holiday season, although that same support is provided throughout the country and is not specific to Colorado. Declaration of Robert Turner ("Turner Dec.") [Dkt. No. 33-1], ¶¶ 9 & 11.

In short, to the extent that Hasbro's products are sold in Colorado, they are sold through retail stores over whom Hasbro has no control or relationship, other than as seller and customer. Merely selling to national retailers, however, who then distribute product around the country as they see fit, cannot constitute the "something more" requirement set forth in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987) and applied by this Court. At best, it establishes that Hasbro could reasonably predict "that its goods will reach the forum state," but that is not enough. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011). "[W]ithout 'conduct

#83067683_v3

purposefully directed at [Colorado],' the forum [does] not have 'power to adjudge the rights and liabilities of [the defendant], and its exercise of jurisdiction would violate due process." *APS Biogroup* at *9 (quoting *J. McIntyre Mach., Ltd*., 564 U.S. at 886-87).

The present case is highly similar to *Fischer v. BMW of N. Am., LLC*, 376 F. Supp.3d 1178 (D. Colo. 2019). In *Fischer*, the plaintiff sought to secure personal jurisdiction over BMW AG, which is a company located in Germany that makes automobiles. *See id.* at 1185. While many such automobiles are sold in Colorado, those sales were effectuated through BMW of North America, LLC ("BMW NA"), not BMW AG. *Id.* Nevertheless, the plaintiff claimed that the Court had personal jurisdiction because, *inter alia*, BMW AG had "created a global distribution system and marketed its automotive products through a 'sales agent' in Colorado." *Id*. at 1185.

In rejecting that argument, the Court observed that "plaintiff has offered no allegations or evidence that defendant specifically targeted Colorado with its distribution efforts … and the creation of a global, or even nationwide, distribution system is insufficient, standing alone, to demonstrate minimum contacts with Colorado." *Id.* at 1186 (citing *Lynch v. Olympus Am., Inc*., No. 18-cv-00512-NYW, 2018 WL 5619327, at *8 (D. Colo. Oct. 30, 2018) and *J. McIntyre Machinery, Ltd*., 564 U.S. at 885-86). And in doing so, the Court explicitly considered and rejected the one case cited by Buck, *Etchieson v. Central Purchasing, LLC*, 232 P.3d 301, 307 (Colo. App. 2010). Response at 5. It did so because *Etchieson* was decided after the Supreme Court's decision in *J. McIntyre Machinery,* and, in any event, was "not binding on this Court's federal due process analysis." *Id.* at 1188. As such, Buck has failed to establish the "purposefully directed" prong.

#83067683_v3

## 2. Buck's Alleged Injuries Do Not "Arise Out of" and Are not "Related to" Hasbro's Claimed Conduct in the State

A plaintiff "must also establish a *prima facie* case that 'the litigation results from the alleged injuries that arise out of or relate to [the defendant's] activities' in the forum state." *APS Biogroup* at \*11 (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010)). Although, as this Court has noted, the Tenth Circuit has "not selected a test to determine whether this requirement has been met," it previously had analyzed two approaches: (1) "whether the plaintiff can show the 'defendant's forum-related activities were an 'event in the causal chain leading to plaintiff's injury,'" and (2) "whether any of the defendant's contacts with the forum are relevant to the merits of plaintiff's claim." *Id.* (quoting *Tomelleri v. MEDL Mobile, Inc.*, 657 F. App'x 793, 796 (10th Cir. 2016) (quoting *Dudnikov*, 514 F.3d at 1078)); s*ee also, Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, -- S.Ct. --, 2021 WL 1132515 at\* 5 (Mar. 25, 2021) ("In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to the forum.").

Buck appears to assert that, if he has the Transformers-branded hockey pads made, they would be made in Canada but used in Colorado. Therefore, if Hasbro chose to enforce its copyright rights, it would have to bring a lawsuit in Colorado. As such, Buck claims, his injury arises out of Hasbro's in-state conduct. Response at 7-8.

But that argument misses the point. The conduct at issue here is Hasbro's denial of Buck's request. Hasbro made and communicated that denial from Massachusetts and Rhode Island. Motion at 3 fn. 1; Turner Dec. at ¶¶ 6 & 7. Buck does not dispute those facts.

The conduct in the forum, on the other hand, involves retailers' sales of Hasbro product. The two are entirely disconnected. On their face, it is clear that those sales cannot, in

any way, be "an event in the causal chain leading to plaintiff's injury," nor are those sales "relevant to the merits of plaintiff's claim." *APS Biogroup* at \*11. As such, Buck cannot establish that "the litigation results from the alleged injuries that arise out of or relate to [Hasbro's] activities in the forum state." *Id.*[1]

## B. This Court Lacks Subject Matter Jurisdiction Over Buck's Claims

Buck argues that "the infringement is not theoretical, the Plaintiff is not expressing a mere desire, he has contracted with a manufacturer and retailer to produce pads that if they were made, would subject all parties to copyright litigation." Response at 14-15. But Buck has no basis to make such a claim. Hasbro has not threatened suit, or indeed taken any affirmative action at all. And Buck has no basis to conclude that Hasbro *would* sue if Buck had the hockey pads made. Much goes into a decision about whether to file a lawsuit, particularly where, as here, that lawsuit would involve individual conduct that Hasbro may not even come to learn exists. Absent some other conduct by a defendant, where no threat of a lawsuit has been made, jurisdiction does not exist. *See Adirondack Cookie Co., Inc. v. Monaco Baking Co.*, 871 F.Supp.2d 86, 93 (N.D.N.Y. 2012) (finding no jurisdiction where defendant, *inter alia,* "never asserted that it planned to bring suit against plaintiff for infringing on its patent rights"); *Micro Focus (US), Inc. v. Genesys Software Servs., Inc.*, C.A. No. 14-14049-NMG, 2015 WL 4480358, \*2 (finding no jurisdiction in

---

[1] Buck alleges that this Court has venue under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a). (Compl. at ¶7.) Buck does not allege copyright infringement, however; rather, he has brought a declaratory judgment action seeking a declaration of non-infringement. Under those circumstances, only the general venue statute applies. *See U.S. Aluminum Corp. v. Kawneer Co., Inc.*, 694 F.2d 193, 195 (9th Cir. 1982). This Court should dismiss this case for improper venue for the same reasons that this Court should dismiss for lack of personal jurisdiction.

#83067683_v3

part because the defendant had not "raised, or even threatened to raise, a patent or copyright infringement claim").

In reality, the present situation represents the kind of "subjective fear of potential legal ramifications [that], without more, is insufficient to invoke declaratory judgment jurisdiction." *Adirondack Cookie Co., Inc.*, 871 F.Supp.2d at 92; s*ee also, Prasco, LLC v. Medicis Pharm. Corp.,* 537 F.3d 1329, 1338 (Fed. Cir. 2008)("[T]he Supreme Court has emphasized that a fear of future harm that is only subjective is not an injury or threat of injury caused by the defendant that can be the basis of an Article III case or controversy."). In this instance, the subject fear apparently comes from the manufacturer, who Buck would like to make the hockey pads. But whether that fear originates from Buck or Buck's manufacturer, the analysis is the same: the lawsuit is based upon a subjective fear about the possibility of a future lawsuit that was not inspired by any threat by Hasbro.

Further, while Buck has shown potential designs that may be on a product, he has not even identified a product for this Court to analyze. First Amended Complaint [Dkt. No. 28], ¶¶ 19-21, 27-29 & 36. Perhaps more importantly, he has not even identified any actual copyrights for this Court to examine. Indeed, in the Amended Complaint, Buck describes the controversy as a question as to "whether the proposed hockey equipment infringes *any copyright* owned by Hasbro." First Amended Complaint [Dkt. No. 28], ¶ 36 (emphasis added). In other words, if the Court were to proceed with the lawsuit, it literally would have no product to examine and no copyrights to compare to the non-existent product. Nor, for that matter, do we even know if the unidentified copyrights are registered, which would be necessary before a lawsuit could even be brought. *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com LLC*, 139 S.Ct. 881, 886-87

(2019). Under such circumstances, no actual case or controversy exists. *See Windstream Servs., LLC v. BMG Rights Mgmt. (US) LLC*, No. 16-cv-5015-KMW-RLE, 2017 WL 1386357, *7-8 (S.D.N.Y. 2017)(finding no case or controversy in part because the plaintiff failed to identify the copyrights that were at issue); *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F.Supp.2d 1265, 1269-70 (S.D. Cal. 2007)("[B]ecause Plaintiff does not reference any specific copyright, even by way of example, the relief requested would necessarily take the form of an advisory opinion.").

In the end, it simply cannot be enough that an individual can seek consent to commit an act, and then, when consent is not given, file a lawsuit. In first contacting Hasbro, Buck sought advice on whether his behavior was acceptable to Hasbro. Having failed to achieve a satisfactory response, Buck now seeks advice from the Court. Such facts cannot create a case and controversy under the Declaratory Judgment Act. *See Windstream Servs., LLC*, 2017 WL 1386357 at *7-8 (not reported) (finding no actual case or controversy where the plaintiff sought an advisory opinion on whether the plaintiff qualified for DMCA safe harbor provisions); *Veoh Networks, Inc.*, 522 F.Supp.2d at 1269-70.

## C.    Buck's Claims Fail as a Matter of Law

Although Buck claimed in the Amended Complaint that his proposed hockey pads would not infringe Hasbro's copyrights, he makes no effort to support that claim in his Response. Accordingly, the only issue with regard to the Rule 12(b)(6) portion of the Motion is whether Buck's proposed hockey pads constitute "fair use." And in that regard, both parties agree that that determination is made by evaluating the four factors articulated in the Motion. Motion at 12-13.

First, with regard to the "purpose and the character of the use," Buck agrees that, to be fair use, the work must be "transformative." Response at 15. Transformative works "generally further

'the goal of copyright, [i.e.] to promote science and the arts." *Lucasfilm Ltd. v. Ren Ventures*, 2018 WL 5310831, *4 (N.D. Cal. June 29, 2018) (bracket in original). As the Second Circuit has explained, "to the extent that the secondary use 'adds something new, with a further purpose or different character,' [*i.e.* is transformative], the value generated goes beyond the value that inheres in the original and 'the goal of copyright, to promote science and the art, is generally furthered." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 923 (2nd Cir. 1994)(quotation omitted).

Needless to say, none of that reasoning applies to the present situation. Here, Buck wants to pay an unlicensed manufacturer to make something he is not licensed to do. Hasbro unsurprisingly will not affirmatively consent to that use. To suggest that such a use is transformative, however, is without basis.

In claiming to the contrary, Buck argues that the proposed work is transformative because the Transformers images are being put on hockey pads, "are intended to be a functional tribute to a childhood memory, and ... exist in a market that the Defendant does not exist or compete in." *Id.* at 15-6. As a preliminary matter, even a basic Google search of "Transformers hockey equipment" turns up a licensed supplier of Transformers hockey jerseys: https://www.80stees.com/products/optimus-prime-hockey-jersey. As such, it is unclear how Buck can claim that Hasbro does not compete in the hockey equipment market.

Regardless, there is nothing inherently transformative about putting an existing image on a different medium, whether as a tribute to a childhood memory or otherwise. Indeed, by making the proposed product a "tribute" to his memories, Buck in fact is trying to evoke the imagery of the copyrighted works. In such a situation, Buck is hardly "add[ing] something new, with a further

- 8 -

purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578-79 (1994).

Second, with regard to the "nature of the copyrighted work," Buck does not dispute that the copied works are creative, and therefore that this factor weighs in Hasbro's favor. Response at 17. Rather, citing to the Second Circuit's decisions in *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2nd Cir. 2006) and *Blanch v. Koons*, 467 F.3d 244 (2nd Cir. 2006), Buck claims that this factor is not important because his work is "transformative." Response at 16-17. In those cases, however, the defendant was engaged in legitimate transformative work. For the reasons stated above, that is not the case here.

Third, with regard to the "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," Buck again concedes that he uses a large portion of the protected work, but claims that he must do so to achieve his transformative goals. Response at 18. But Buck's goal is to create hockey pads that fully invoke the Transformers brand. It is not to create some other concept or message. As such, this factor weighs heavily in Hasbro's favor.

Finally, with regard to "the effect of the use upon the potential market for or value of the copyrighted work," as noted above, it is simply false to suggest that the Transformers brand is not already in the hockey equipment market. Buck correctly observes, however, that this factor requires a balancing of "the benefit the public will derive if the use if permitted and the personal gain the copyright owner will receive if the use is denied." *MCA, Inc. v. Wilson,* 677 F.2d 180, 183 (2nd Cir. 1981). Response at 18. But then Buck makes no attempt to identify a benefit to the public in his private use of hockey pads with Transformers images on them. *Id.* at 18-19. That is

presumably because there is no public benefit.  Hasbro, on the other hand, has a clear interest in preserving its licensing scheme and avoiding the unauthorized sale of its branded products.

Additionally, Buck argues that the Court is "limited in the behavior of the Plaintiff, not other potential tortfeasors." Response at 19.  But the Court's focus is properly on the nature of the conduct, and the impact on the market were that conduct to become widespread.  *See Campbell*, 510 U.S. at 590.  That impact here would be substantial.

## II.    <u>CONCLUSION</u>

For the reasons set forth above and in the Motion, Hasbro respectfully requests that the Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and, alternatively, 12(b)(6).

Dated:  March 26, 2021.

Respectfully submitted,

HOLLAND & KNIGHT LLP

*/s/ Joshua C. Krumholz*
Joshua C. Krumholz
10 St. James Avenue
Boston, MA  02116-3889
Telephone:  (617) 523-2700
Facsimile:  (617) 523-6850
Email:  joshua.krumholz@hklaw.com

*/s/ Shay Powell Talbitzer*
Shay Powell Talbitzer
1801 California Street, Suite 5000
Denver, CO  80202
Telephone:  (303) 974-6642
Facsimile:  (303) 974.6659
Email:  shay.talbitzer@hklaw.com

*Attorneys for Defendant HASBRO, INC.*

## CERTIFICATE OF SERVICE

I hereby certify on this 26th day of March, 2021 a true and correct copy of the foregoing document **HASBRO, INC.'S REPLY IN SUPPORT OF HASBRO, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV P. 12(b)(1), 12(b)(2) AND, ALTERNATIVELY, 12(b)(6)** was e-filed and electronically served via the CM/ECF system on the following:

Matthew Buck
RED LAW
144 West 11th Avenue
Denver, CO 80204
matt@red.law
*Pro Se Plaintiff*

/s/  *Shay P. Talbitzer*
*Shay P. Talbitzer*

#83067683_v3