IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03382-WJM-MEH

MATTHEW BUCK,

    Plaintiff,

v.

HASBRO, INC.,

    Defendant.

───────────────────────────────────────────────────────────────

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
───────────────────────────────────────────────────────────────

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant's Motion to Dismiss. ECF 33. The Motion was referred to this Court for recommendation. It is fully briefed, and the Court finds that oral argument will not materially assist in its adjudication. Based upon the record herein and for the reasons that follow, the Court respectfully recommends that the Motion be granted.

## BACKGROUND

**I.    Alleged Facts**

    Defendant owns the "Transformers" franchise and holds the copyright to the franchise's images. ECF 28 at ¶ 10.

    Plaintiff enjoys the sport of ice hockey and wishes to wear hockey pads decorated with Transformers-related images when he plays. *Id*. at ¶¶ 8–9. No such sporting goods are available for him to purchase retail. *Id*. at ¶ 11. Therefore, on his own initiative, he collaborated with an artist and others to create his desired hockey pads. *Id*. at ¶¶ 15, 19, 30.

After creating the designs, Plaintiff hired a manufacturer to produce the physical hockey pads. *Id.* at ¶ 18. However, neither the designer nor the manufacturer would proceed any further with his project without a permission letter from Defendant. *Id.* at ¶¶ 21, 32.

Plaintiff contacted Defendant through its "permissions@hasbro.com" email address. Defendant declined to give him permission to use its copyrighted Transformers images for the hockey pads. *Id.* at ¶¶ 23–26.

## II. Claims for Relief

Plaintiff disagrees that his hockey pad designs infringe Defendant's copyright. The images may bear "the likeness and idea of Defendant's intellectual property" (*id.* at ¶ 2) and otherwise evoke the Transformers (*id.* at ¶¶ 13, 30). However, the images are distinct and are themselves transformative in nature. *Id.* at ¶¶ 31, 38, 42. He adds that he will use the hockey pads only for a private, non-commercial purpose. *Id.* at ¶¶ 1, 16. He will not profit from them. *Id.* at ¶ 9. Although he considers them to be non-infringing, he expresses concern about the potential of "almost $1,000,000" in damages should Defendant sue him for infringement for each of the designs. *Id.* at ¶ 33.

Therefore, he brings two claims for declaratory judgment pursuant to 28 U.S.C. § 2201. He seeks a determination that his hockey pad designs do not infringe Defendant's copyright in violation of 17 U.S.C. §§ 101, *et seq.*, and that they constitute "fair use" as permitted by 17 U.S.C. § 107.

## III. Grounds for Dismissal

Defendant raises three arguments for why Plaintiff's declaratory judgment complaint should be dismissed. Characterizing this lawsuit as a request for guidance rather than an actual case or controversy, Defendant contends that the Court lacks subject matter jurisdiction. Defendant

furthers that both claims fail as a matter of law, arguing that the hockey pads do infringe its copyright and do not constitute fair use. The third basis for dismissal that Defendant asserts is a lack of personal jurisdiction. In the below analysis, the Court finds that it does not have personal jurisdiction over Defendant. Given the lack of such jurisdiction, the Court does not reach the other two grounds.

## **LEGAL STANDARDS**

### I. Fed. R. Civ. P. 12(b)(2) Lack of Personal Jurisdiction

"Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a *prima facie* showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *see also Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 900 (10th Cir. 2017). "The plaintiff may make this *prima facie* showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.

*Wenz*, 55 F.3d at 1505 (citations and internal quotation marks omitted).

### II. Personal Jurisdiction

"Jurisdiction to resolve cases on the merits requires . . . authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)).

The burden of establishing personal jurisdiction is on the plaintiff. *XMission, LC v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020).

In a federal question case, the federal court must determine "(1) whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). As there is no federal statute authorizing nationwide personal jurisdiction in this case, Fed. R. Civ. P. 4(k)(1)(A) refers to the Colorado long-arm statute. *Old Republic Ins. Co.*, 877 F.3d at 903. In Colorado, only one inquiry is necessary. The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124(1), "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions," and its requirements are necessarily addressed under the due process standard. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). In other words, the statute's requirements merge into the constitutional due process analysis. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). For a court to exercise personal jurisdiction in harmony with due process, a defendant must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend traditional notions of fair play and substantial justice. The contacts must be of the kind that reasonably should cause a defendant to anticipate being haled into court there. *XMission*, 955 F.3d at 839.

There are "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, — S.Ct. —, 2021 WL 1132515, at *4 (Mar. 25, 2021). Plaintiff does not proceed on a theory of general jurisdiction. Moreover, Defendant identifies Rhode Island as both its state of incorporation and principle place of business (ECF 33-1 at ¶ 2), which are a

corporation's two paradigm "homes" for general personal jurisdiction purposes. *Ford*, 2021 WL 1132515 at *5. Instead, Plaintiff argues that this Court has specific jurisdiction over Defendant.

"Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction "has two requirements: (i) that the defendant must have purposefully directed its activities at residents of the forum state, and (ii) that the plaintiff's injuries must arise out of the defendant's forum-related activities." *C5 Med. Werks, LLC v. CeramTec GmbH*, 937 F.3d 1319, 1323 (10th Cir. 2019) (citing *Old Republic Ins. Co.*, 877 F.3d at 903). By meeting those two requirements, a plaintiff establishes the minimum contacts needed for a court to assert jurisdiction over a defendant. *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010).

    a.    <u>Purposeful Availment</u>

The defendant must have taken some act by which it purposefully avails itself of the privilege of conducting activities within the forum state. The contacts must be the defendant's own choice. The defendant must have deliberately reached out beyond its home, *e.g.*, by exploiting a market in the forum state or entering a contractual relationship centered there. Random, isolated, or fortuitous contacts are insufficient. *Ford*, 2021 WL 1132515 at *4.

    b.    <u>Relationship Between the Forum Contacts and the Underlying Controversy</u>

Contacts, alone, are insufficient. Plaintiff's claims must arise out of or relate to the defendant's contacts with the forum state. In other words, there must be a connection between the plaintiff's lawsuit and the defendant's activities in the state. The "arise out of" component generally is met when there is a causal relationship between the two. The "relate to" component is met by some other kind of relationship, affiliation, or connection. *Ford*, 2021 WL 1132515 at *4–

5. The Tenth Circuit has used two approaches to determine whether this requirement is met. The first is whether the plaintiff can show the "defendant's forum-related activities were an 'event in the causal chain leading to plaintiff's injury.'" *Tomelleri v. MEDL Mobile, Inc.*, 657 F. App'x 793, 796 (10th Cir. 2016) (quoting *Dudnikov*, 514 F.3d at 1078). The second is "whether any of the defendant's contacts with the forum are relevant to the merits of plaintiff's claim." *Id.*

      c.      <u>The Unreasonable Exercise of Jurisdiction</u>

If the plaintiff makes the above *prima facie* showing, a court still may decline to exercise personal jurisdiction over a defendant if doing so would be unreasonable. *OMI Holdings, Inc.*, 149 F.3d at 1091. Unreasonableness is assessed by considering (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *XMission*, 955 F.3d at 840. The defendant has the burden of disproving reasonableness. *Gordon Howard Assocs., Inc. v. Lunareye, Inc.*, No. 13-cv-01829-CMA-MJW, 2013 WL 5637678, at *2 (D. Colo. Oct. 15, 2013).

## **ANALYSIS**

The first issue is whether the record supports a finding of purposeful availment. In his Amended Complaint, Plaintiff describes Defendant as a "multinational corporation . . . doing business across the world, including across Colorado." ECF 28 at ¶ 4. He alleges that Defendant directs activity at Colorado's residents by advertising, distributing, and selling its products in the state. He argues that the first requirement is met even if Defendant sells its product indirectly through third-party distributors or retailers. In essence, Plaintiff relies on a "stream of commerce" theory. However, the simple fact that Defendant sells Transformers products in Colorado is not

enough by itself. Merely placing a product in the stream of commerce is insufficient; Defendant must have done something more, in addition to that, to evince purposeful availment. *APS Biogroup v. Sterling Tech., Inc.*, No. 19-cv-02952-RM-MEH, 2020 WL 6118751, at *9 (D. Colo. Apr. 6, 2020); *Relaximals, Inc. v. Brentwood Originals, Inc.*, No. 19-cv-02721-MEH, 2020 WL 1529179, at *7–8 (D. Colo. Mar. 31, 2020); *Fischer v. BMW of N. Am., LLC*, 376 F. Supp. 3d 1178, 1184 (D. Colo. 2019).

The record does not show that Defendant acted in Colorado in a way differently than its general sales activities nationwide. Plaintiff pleads that Defendant "conducts regular business in the state of Colorado," ECF 28 at ¶ 6, but he does not explain what it consists of. Plaintiff furthers that Defendant has employees in both Denver and Colorado Springs, *id*., but Defendant concedes only that it "may, from time to time, retain temporary workers or independent contractors to help retailers in the state during the holiday season." ECF 33-1 at ¶ 9. That employment practice is consistent with what Defendant "sometimes does in states throughout the country." *Id*. Defendant denies having "a physical presence" in Colorado since 2019 (*id*.), and it denies owning any real property in the state (*id*. at ¶ 10). The "only present connection to Colorado" that Defendant admits is "that retailers sell [its] product in the state, and residents may shop for [its] product online." *Id*. at ¶ 11. However, it qualifies that representation by adding that "any online purchases still must go through an authorized retailer" (*id*.), and that it "does not specifically target Colorado or Colorado residents in connection with those sales" (*id.*). Because Plaintiff shows no additional actions by Defendant specifically directed at Colorado, he does not meet the first jurisdictional requirement.

Even if there were sufficient Colorado contacts for purposeful availment, Plaintiff also must demonstrate a relationship, causal or otherwise, between it and his claims for relief. To begin

with, the mere fact that Defendant sells products in Colorado that bear the subject copyright does not establish the required relationship. *GSI Lumonics, Inc. v. Biodiscovery, Inc.*, 112 F. Supp. 2d 99, 107–09 (D. Mass. Aug. 25, 2000). If a plaintiff sues for a declaration of non-infringement, the dispositive issue instead turns on the extent to which the defendant copyright holder purposefully directed enforcement activities at the forum state's residents and the extent to which the declaratory judgment claim arises out of or relates to those activities. In other words, only those activities that relate to the enforcement or defense of the copyright can give rise to specific personal jurisdiction for such an action. *New Belgium Brewing Co. v. Travis Cty. Brewing Co.*, No. 15-cv-00272-MEH, 2015 WL 2106329, at *7–8 (D. Colo. May 1, 2015) (citing *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009) and *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324 (Fed. Cir. 2008)). *New Belgium* addressed a trademark and *Avocent* a patent, but the rule applies equally to a copyright, as well, *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 657 (N.D. Ohio 2019) (explaining that *Avocent*'s rule applies to the intellectual property context, generally).

Were Defendant to sue him for copyright infringement, Plaintiff assumes Defendant would bring its lawsuit in Colorado. Plaintiff reasons therefrom that his lawsuit—through which he seeks a declaration of non-infringement—has the same relationship to Colorado. Plaintiff also alleges "that he will suffer damages as a direct result of Defendant's copyright-related activity and contacts with Colorado." ECF 39 at 8. However, there is no indication that Defendant has taken any action in Colorado with respect to enforcing or protecting its copyright either generally or with respect to Plaintiff, specifically. Plaintiff communicated with Defendant through its "permissions@hasbro.com" email address. Defendant's actions were limited to (1) responding "with a flat refusal, explaining that [it] cannot honor every request" and (2) a response from

8

Elizabeth Cox, its Deputy General Counsel. ECF 28 at ¶¶ 22–25. Beyond those two denials of permission, Plaintiff identifies no affirmative action by Defendant. For example, it sent him no request to stop his project. Defendant describes its reaction in the same way. It denies taking any action beyond denying his request. ECF 33-1 at ¶ 5. It emphasizes that it "has not threatened a lawsuit, complained of [Plaintiff's] conduct and activities, or indeed taken any affirmative action at all. Rather, [it] merely declined to grant [him] the permission he sought." ECF 33 at 11.

Plaintiff does not show that Defendant has the kind of contacts with Colorado that would support this Court's exercise of personal jurisdiction over it for purposes of litigating this lawsuit. This case falls far short of what supported the exercise of personal jurisdiction in *Dudnikov*. In that case, the out-of-state defendant reacted to the suspected infringement of its copyright by invoking a procedure that suspended plaintiffs' ability to sell online (thereby hindering plaintiffs' business) and threatening them with litigation. *Dudnikov*, 514 F.3d at 1075, 1079.

## **CONCLUSION**

Plaintiff does not meet its burden of showing how this Court may exercise personal jurisdiction over Defendant in Colorado for the purpose of deciding his declaratory judgment claims. Because this Court lacks jurisdiction over Defendant, there is no need to consider whether it has subject matter jurisdiction over the dispute or whether Plaintiff pleads plausible claims for relief.

Accordingly, the Court respectfully RECOMMENDS that the Motion to Dismiss [filed March 1, 2021; ECF 33] be **granted** for lack of personal jurisdiction, and that this case be dismissed without prejudice on that basis**.**[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those

Entered and dated this 5th day of April, 2021, in Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).